UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA

-against-

GARY KERSHNER et al.,

                              Defendants.
------------------------------------------------------------ x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JAN 0 3 2020 ★
BROOKLYN OFFICE

MEMORANDUM & ORDER

13-CR-452 (ENV) (S-2)

VITALIANO, D.J.

On November 9, 2015, defendant Gary Kershner was convicted by jury of wire fraud, securities fraud, conspiracy to commit securities and wire fraud, and of making false statements to the FBI. Following the verdict, Kershner submitted a letter to the Court alleging ineffective assistance by his trial counsel. The Court, construing his letter as a motion for a new trial under Federal Rule of Criminal Procedure 33, ordered the appointment of new counsel. Due to unforeseen circumstances, a second successor counsel was appointed, explaining the unusual delay in the submission of Kershner's ineffective assistance motion. With briefing finally completed and counsel having been heard, and for the reasons that follow, Kershner's motion directed at the verdict is denied.

## Background

The Court presumes the familiarity of the parties with the underlying facts, the trial, and the post-trial procedural events. None of that history will be repeated here except as helpful to an understanding of Kershner's instant motion and the Court's adjudication of it.

Shortly after the verdict was reached, Kershner joined co-defendant Songkram Roy Sahachaisere's motion, pursuant to Rules 29 and 33, for a judgment of acquittal notwithstanding the verdict, or, in the alternative, a new trial. *See generally* Dkt. 350; Dkt. 353. They argued,

*inter alia*, that there was a failure of proof that their promotion of and trading in certain publicly traded stocks was fraudulent. In denying the original post-verdict motion, the Court held, as to Kershner, that the evidence presented against him at trial was "voluminous, comprehensive and overwhelmingly incriminating."[1] Dkt. 394, Mem. & Order, Apr. 19, 2016 ("Mem. & Order"), at 2. Kershner's motion offers now nothing substantively new.

It is important to note, though, that ineffective assistance storm signals did begin to sound while the joint motion of Sahachaisere and Kershner was *sub judice*. On February 2, 2016, Kershner filed the letter, dated January 25, 2016 and referenced above, contending that his trial counsel then representing him on the joint motion had failed to render effective assistance and requesting the appointment of new counsel. Dkt. 366. Specifically, Kershner contended that his counsel had not kept him fully informed, had not sufficiently prepared for trial, and had failed to call witnesses he had identified who would have provided exculpatory evidence. *Id.* As requested, new counsel was appointed. *See* Feb. 25, 2016 Minute Entry. However, when an ethical conflict surfaced, successor (and current) counsel was appointed in September 2018. Dkts. 511, 515, 517.

Long after the post-verdict motion of Sahachaisere and Kershner had been denied, on November 8, 2018, Kershner's counsel filed a letter requesting an extension of "the time under Rule 33 of the Federal Rule of Criminal Procedure for the filing of a motion to vacate the verdict based on 'newly discovered evidence' to January 15, 2019." Dkt. 524. The Court granted this request "[w]ithout prejudice to a determination that defendant Kershner is not entitled to a second bite at the Rule 33 apple." Nov. 15, 2018 Order. When the whirl of events muddied the

---

[1] The conviction of Sahachaisere at his joint trial with Kershner was affirmed in a Summary Order. *United States v. Winick*, — F. App'x —, No. 18-2200-CR, 2019 WL 6605450 (2d Cir. Dec. 5, 2019).

2

procedural waters, the Court scheduled a status conference for February 8, 2019. Feb. 1, 2019 Order.

More precisely, January 15, 2019 came and went without a new Rule 33 filing by Kershner. Kershner's counsel would argue at the February 8, 2019 status conference that Kershner had already filed a Rule 33 motion, but had done so *pro se*. Feb 8, 2019 Status Conf. Tr. ("Tr."), at 2:18–19. Making no assumptions as to his reasoning, Kershner's counsel also acknowledged that he had made no filing, labeled as a new motion or supplementing the *pro se* motion, within the extended time for filing granted to him by the Court. *Id.* at 4:7–8, 5:18, 6:13–18. With proceedings already much-delayed by a set of largely unusual circumstances, the government opposed the request of Kershner's counsel for a further extension of time to file a new motion or supplement Kershner's *pro se* motion. The Court agreed, and construed Kershner's *pro se* letter of January 2016 to be filed as a Rule 33 motion. *Id.* at 9:16–10–10. The Court then set a briefing schedule for the government's opposition and Kershner's reply. *Id.* at 9:16–10:11.

## Legal Standard

Rule 33 allows, upon a defendant's motion, the setting aside of a guilty verdict or vacatur of judgment and the granting of a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A defendant may, within three years after the verdict, file a Rule 33 motion grounded on newly discovered evidence, Fed. R. Crim. P. 33(b)(1), or, within 14 days of the verdict, file a Rule 33 motion on any other grounds. *Id.* 33(b)(2). Notwithstanding these periods of limitation, the trial court may, *sua sponte*, extend the time, or it may do so "for good cause" on a party's motion if the untimeliness was due to "excusable neglect." Fed. R. Crim. P. 45(b)(1); *see also United States v. DiTomasso*, 932 F.3d 58, 69–70 (2d Cir. 2019) (reviewing, on the merits, a district court's denial of a Rule 33 motion alleging ineffective assistance of counsel, filed, *pro se*,

3

over two months after the verdict); *United States v. DiTomasso*, No. 14-cr-160-VEC, Dkts. 91 (*pro se* letter, May 11, 2016) & 97 (Order, June 6, 2016).[2]

Once properly filed, the task hardly gets easier; district courts may only grant a Rule 33 motion "'sparingly,' and only 'in the most extraordinary circumstances.'" *DiTomasso*, 932 F.3d at 69 (2d Cir. 2019) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)). Applying that standard, to succeed on an ineffectiveness claim, "the defendant must show both (1) 'that counsel's representation fell below an objective standard of reasonableness' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 69 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Assessment of the first factor carries with it "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'" *United States v. Caracappa*, 614 F.3d 30, 46 (2d Cir. 2010) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)). As for the second factor, a defendant must show "a probability sufficient to undermine the confidence in the outcome." *Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694).

Discussion

In an effort to put meat on the bone of the claim that his trial counsel failed to fully consult with him and adequately prepare for trial, Kershner points to trial counsel's failure to call

---

[2] The government calls into question the propriety of addressing ineffective assistance claims under Rule 33, in contradistinction to its ordinary collateral consideration in a proceeding under 28 U.S.C. § 2255. Although somewhat unsettled at the time of briefing, the Second Circuit in *DiTomasso* appears to have resolved any doubt about the propriety of such a motion in Kershner's favor. *See DiTomasso*, 932 F.3d at 69–70.

certain witnesses or to more extensively cross-examine government witnesses which, if pursued, he argues, would have made out a good-faith defense. In the reply papers submitted by his current counsel, Kershner offers his own profession of innocence, which he could have offered at trial but declined to do so. He also contends, simply on the strength of his own conclusory allegations, as to what seven individuals would have said if called to testify. For example, Kershner claims lead defendant Sandy Winick, who had already pleaded guilty, would have, nevertheless, testified that Kershner was an honest businessman with no knowledge of Winick's or Muhammed Dolah's promoting activities, that Nikron and Talisman Holdings were "the real deal," and that cooperating witness Dolah's testimony regarding Kershner's involvement in the "pump and dump" scheme was "a blatant lie." Reply Br. at 10–12. Kershner further contends that others would have similarly testified, in sum and substance, that the companies with which Kershner was involved were legitimate or, in the very least, that he believed them to be legitimate. *Id.* at 12–21. Some, he says, would have also purportedly offered favorable character testimony as to his work ethic and values. *Id.* at 12–14.

Many labels may attach to the proffer Kershner makes on this motion, but "newly discovered" evidence is not one of them. *See* Fed. R. Crim. P. 33(b)(1). Indeed, his counsel forthrightly represented at the status conference convened on this motion that after months of review, investigation and research, he had unearthed no newly discovered evidence. *See* Tr. at 4:7–8. It was at this point that the ground shifted with the motion taking on a decidedly *Strickland* caste. To the *Strickland* objective the motion now advances, Kershner hypothesizes the eagerness of witnesses willing to testify on his behalf. Trial counsel's ineffectiveness was pegged to his failure to spend enough time with Kershner to learn who they were, craft a tale of good faith and introduce the testimony of these witnesses to bring it to life. The motion was no

longer bringing word of new evidence but of strategic opportunities squandered by ineffective counsel.

None of this alters the bottom-line result. Assuming all that Kershner asserts about his trial counsel's performance is accurate, quite dispositively, Kershner has failed to demonstrate prejudice.[3] For example, the favorable character evidence he contends should have been introduced may have been helpful and cast him in a positive light, but, standing alone, surely would not have altered the outcome of the trial. *See United States v. Wilson*, 146 F. Supp. 3d 472, 482 (E.D.N.Y. 2015).

Cut from the same cloth is his claim that trial counsel could, and should, have called witnesses to "establish [that the target companies were] viable, ongoing businesses." Reply Br. at 14, 17. Such evidence offers little, if any, defense. In fact, the Court rejected essentially the same argument, *i.e.*, that evidence of a *bona fide* business enterprise was incompatible with a finding of fraud, when it was advanced by counsel for Sahachaisere on the joint post-verdict motion filed on behalf of Sahachaisere and Kershner. *See* Mem. & Order at 11.

Bluntly, that Kershner can point to witnesses who *might* testify now who could have testified at trial as to his good character, or that some or all of the target companies had legitimate objectives, speaks not a whisper to Kershner's role in the charged misrepresentations

---

[3] Because Kershner fails to demonstrate that, but for his trial counsel's allegedly unconstitutional representation, the outcome of his trial would have been different, the Court need not determine whether counsel's representation of him was objectively reasonable as a matter of strategy and execution, a task made all the more daunting in that co-defendant's counsel had the lead role in what, for the most part, was a joint defense. In any event, it is also helpful to keep in mind that trial counsel's performance must not be viewed through the "'distorting' lens of hindsight but 'from counsel's perspective at the time.'" *Gaskin*, 364 F.3d at 469 (quoting *Strickland*, 466 U.S. at 689). Had the Court considered such an argument, caution in any case would be in order when reviewing questions of trial strategy, including decisions not to call particular witnesses. *Bierenbaum*, 607 F.3d at 55.

in the trading in securities of these companies, much less the mountain of evidence at trial, including recordings of Kershner discussing his fraudulent activities, *see, e.g.*, GX 535–36, 549, bank records supporting the falsity of press releases he prepared, and testimony of co-conspirators corroborating the charges and supporting the jury's verdict. Having failed to carry his burden of showing a reasonable probability of a different outcome, his second post-trial motion directed at the verdict grounded in *Strickland* fails for lack of prejudice and must, therefore, be denied as was his first.

## Conclusion

For the foregoing reasons, Kershner's Rule 33 motion for a new trial because of purported ineffective assistance of trial counsel is denied.

Kershner will present himself for sentencing on February 7, 2020 at 11:00am in Courtroom 4-C. Any sentencing submissions by defendant must be filed no later than January 17, 2020. The government's submission shall be filed no later than seven days after the defendant's sentencing submission.

So Ordered.

Dated: Brooklyn, New York
December 24, 2019

s/ ENV
_____
ERIC N. VITALIANO
United States District Judge